Joseph S. Caldwell v. Commissioner.
Joseph S. Caldwell v. Commissioner
Docket No. 28086.
United States Tax Court
1951 Tax Ct. Memo LEXIS 164; 10 T.C.M. (CCH) 611; T.C.M. (RIA) 51199; June 29, 1951
*164 Petitioner was in the lumber business, and a large part of his sales were credit sales. His books were kept on an accrual basis, but only actual cash received was reported for tax purposes. Held, accounts receivable in the sum of $80,000 resulting from credit sales in prior years are not includible in income for the taxable year. Benjamin E. Shove, Esq., 800 Hills Bldg., Syracuse, N. Y., for the petitioner. Clay C. Holmes, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioner's income tax for the year 1947 in the amount of $155,567.68 and a penalty of $10,869.22 for substantial underestimation of tax. The issue is whether respondent was correct in determining petitioner's gross income from his lumber business on an accrual *165 basis and including $183,557.15 therein as accounts receivable without taking into consideration that part outstanding at the beginning of the taxable year. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein. Petitioner is an individual residing in Syracuse, New York. His Federal income tax return for 1947 was filed with the collector of internal revenue for the twenty-first district of New York, Syracuse, New York. In 1890 petitioner began a lumber and builders' supply business in Syracuse which he conducted as a sole proprietorship until October 31, 1947. His books were kept on a calendar year basis. Laura Mildred Caldwell (hereinafter referred to as Laura) has worked for petitioner since 1919 and Joseph S. Caldwell, Jr., (hereinafter referred to as Joseph), since 1925. Laura kept the books of the business for about 20 years prior to the taxable year. She had no formal training in accounting and learned what she knew from working on the books. For about 10 years prior to 1947 she made out petitioner's tax returns. All of petitioner's sales, other than for cash in the yard and mill, are recorded on an autographic *166 register by consecutively numbered sales tickets. These slips are checked at the end of each day to make sure all numbers are accounted for. An invoice for the customer is made from these slips and a carbon copy and the slip are retained by petitioner. Sales are recorded chronologically on the sales record sheets. Data is transferred from the sales record sheets to cards which are kept alphabetically in a file box. There is a card for each charge customer and charge sales and payments are recorded on the card. When a card is filled (which, with an active customer, would take about two months), a new one is put into the box and the old one is removed and put away with other filled cards. There is no specific place to file the old cards and, while most cards for a particular period could be found, it would be impossible to know whether all cards of that period had been found. A separate cash book is kept for cash sales at the yard or mill. A bound book of cash receipts and disbursements is also used. In this book all expenses, receipts from cash sales, receipts of cash on charge sales, and other cash receipts, such as dividends, interest and rent, (not connected with the lumber *167 business), are recorded under appropriate headings. Monthly and annual summarizations are made in the books. All bills are paid by the close of the year so that petitioner has no accounts payable to carry over from one year to the next. All outlays by check are also recorded in the check book on the stubs. Petitioner used inventories in reporting income for Federal taxes. However, only actual cash received, either from credit or cash sales, was reported. This method of keeping his books has always been followed by petitioner. Although during the war most sales were for cash and therefore the accounts receivable would be negligible, after that time, and during the year before us, 90 to 95 per cent of the sales were credit sales. The accounts receivable as of January 1, 1947, were at least $80,000. Petitioner had provided in his will that the business should go to Laura and Joseph. In 1947, it was decided that the business should be incorporated to facilitate testamentary disposition. A certificate of incorporation for J. S. Caldwell Lumber Co., Inc., was filed in New York on September 22, 1947. Petitioner, Laura and Joseph were named as directors and incorporators. Capital *168 stock of $300,000 was authorized, consisting of 3,000 shares of $100 par common stock. On October 31, 1947, petitioner transferred all his interests in the business to the corporation for 2,998 shares of stock. Included in the transferred assets were all the uncollected accounts in the amount of $183,557.15. In October, 1947, counsel preparing the articles of incorporation became concerned about the treatment of uncollected accounts upon transfer of assets to the corporation. After discussion with a certified public accountant, it was decided that upon transfer the accounts receivable should be placed on the corporate books at zero. During its first fiscal year the corporation collected $167,816.92 of said accounts receivable and reported and paid tax on said amount. Of this amount $90,422.08 was collected during November and December, 1947. Petitioner's books were examined by internal revenue agents for the taxable years 1946, 1945, 1944, 1943, 1941, 1933, 1930 and 1928, and, while changes were made, no question was raised regarding the method by which petitioner reported charge sales. Upon audit of petitioner's income tax return for 1947, the respondent determined that petitioner *169 should report his income from the lumber business on an accrual basis, including charge sales, and included $183,557.15 as accounts receivable, without taking into consideration the accounts receivable outstanding at the beginning of the taxable year. Opinion RICE, Judge: Section 41 of the Internal Revenue Code authorizes the respondent to compute a taxpayer's income according to a method which the respondent feels clearly reflects income whenever the method which the taxpayer uses fails to do so. The Commissioner in his discretion may require a taxpayer to change his method of reporting income for income tax purposes and unless an abuse of discretion is shown he will be upheld. C. L. Carver, 10 T.C. 171, 173 (1948), affd., 173 Fed. (2d) 29 (C.A. 6, 1949). No such abuse of discretion has been shown here. The fact that respondent did not make the adjustment in a prior year is immaterial. Z. W. Koby, 14 T.C. 1103 (1950). Having determined that the Commissioner did not err in requiring petitioner to include the accounts receivable in his return for 1947, the next question is whether some consideration should have *170 been given to the accounts receivable outstanding as of January 1, 1947. The distinguishing factor in such cases has been held to be whether the books of the taxpayer properly reflect the income. Commissioner v. Mnookin's Estate, 184 Fed. (2d) 89 (C.A. 8, 1950). Robert G. Frame, 16 T.C. 600, promulgated March 8, 1951. We must, therefore, determine whether petitioner's books properly reflected the accounts receivable, since that is the only item involved here. Individual cards were kept for each charge customer and each transaction with the customer (purchase or payment) was noted thereon, with the date of such transaction. The total amount outstanding was computed after each transaction and was entered on the card. Such a system clearly reflected accounts receivable outstanding as of any date. We therefore hold that the respondent erred in including in petitioner's income for the taxable year accounts receivable in the amount of $80,000 which were due to credit sales prior to January 1, 1947. Decision will be entered under Rule 50.